# Richmond

PROFESSIONAL REALTY CORP. V. WALTER F. BENDER, SR., ET AL.

March 5, 1976.

Record No. 750386.

Present, I'Anson, C.J., Carrico, Cochran, Harman and Poff, JJ.

*Grover C. Wright, Jr.*, for plaintiff in error.

(*Lucian B. Cox, Jr.; Lucian B. Cox, III; Cox, Cox & Cox*, on brief), for defendants in error.

Case submitted on brief for defendants in error.

POFF, J., delivered the opinion of the court.

Professional Realty Corporation (broker) filed a motion for judgment against Walter F. Bender, Sr., and Patricia G. Bender (buyers) alleging that the broker "had earned a stipulated and agreed commission of $3500.00 by being the procuring cause of a definite contract for the sale" of property owned by Gene S. Meekins and Anna M. Meekins (sellers); that the buyers had breached the contract; and that the buyers were liable for the stipulated commission.

The sales contract was executed by all three parties on a printed form containing typewritten interlineations. It provided, *inter alia*, that "[t]he Seller agrees to pay the Agent a cash commission for his services" of $3500.00. In the record before us, the contract document is the only evidence concerning the agreement among the parties. There is no evidence to show whether the sellers executed a listing contract with the broker, and there is no evidence that the buyers employed the services of the broker.

At the conclusion of the broker's evidence, the trial court sustained a motion to strike and entered summary judgment for the buyers. As appears from the approved statement of facts, the trial court found that the broker had proven the facts alleged in the motion for judgment, but ruled "that as a matter of law a broker has no right to sue a defaulting buyer for a commission under a three party contract which imposes on the seller the duty to pay the commission."

On brief, the broker concedes that the majority view holds "that the broker would have no right of recovery against the defaulting purchaser in *two party* real estate sales contracts, the rationale being that there is no *privity* of contract between the broker (a nonparty) and the purchaser (a party)." The broker urges, however, that we adopt a different view grounded upon an "implied contract theory". The broker relies, in part, upon language quoted from *Ellsworth Dobbs, Inc.* v. *Johnson*, 50 N.J. 528, 559, 236 A.2d 843, 859 (1967):

> "[W]hen a prospective buyer solicits a broker to find or to show him property which he might be interested in buying, and the broker finds property satisfactory to him which the owner agrees to sell at the price offered, and the buyer knows the broker will earn commission for the sale from the owner, the law will imply a promise on the part of the buyer to complete the transaction with the owner. If he fails or refuses to do so without valid reason, and thus prevents the broker from earning the commission from the owner, he becomes liable to the broker for breach of the implied promise. The damages chargeable to him will be measured by the amount of commission the broker would have earned from the owner."

The rule urged by the broker is that when the buyer is a party to the sales contract and has actual knowledge of the seller's promise to pay a commission, the buyer's promise to purchase implies a promise to pay the commission if he defaults on his contract with the seller. We decline to adopt such a rule. Rather, we hold that where, as here,

a real estate broker, a seller, and a buyer join in a sales contract in which the seller promises to pay the broker a commission and the buyer makes no such promise, neither we nor the trial courts will indulge an inference to supply the omission, for to do so would be to make a new contract for the three parties.[1]

■ Alternatively, the broker relies upon Code § 55-22 (Repl. Vol. 1974)[2] and argues that "[w]here a contract between a seller and a buyer imposes on the seller the duty to pay a commission to the broker when the sale is consummated, the broker is a third party beneficiary of that contract and may sue a defaulting buyer for breach of that contract." We do not agree.

The third party beneficiary doctrine is subject to the limitation that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him. *See N.-P. Newspapers* v. *Stott*, 208 Va. 228, 231, 156 S.E.2d 610, 612 (1967). Clearly, both the sellers' covenant to sell to the buyers and the sellers' covenant to pay a commission for services rendered by the broker ran in favor of the broker; together, they evince the sellers' intent to confer a benefit upon the broker. But the buyers' promise to purchase ran in favor of the sellers; that promise was made in consideration of the sellers' promise to sell, not in consideration of brokerage services rendered, and cannot fairly be construed to evince an intent by the buyers to confer a gratuitous benefit upon the broker. Indeed, in the presence of the sellers' express covenant to pay the commission, the absence of a covenant by the buyers evinces a contrary intent. Our language in *Burton* v. *Chesapeake Box, etc., Corp.*, 190 Va. 755, 767, 57 S.E.2d 904, 909 (1950), although employed in a different context, is pertinent. There, we said that the third party beneficiary statute "has no

---

[1] Our holding is fully consistent with the rule that when all three parties execute the sales contract and the contract contains a provision requiring the purchaser, upon his default, to pay the brokerage commission, the broker has a chose in action against the purchaser. *See*, Annot., 30 A.L.R. 3d 1396, 1408-09 (1970).

[2] "§ 55-22. **When person not a party, etc., may take or sue under instrument.** —An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well."

application unless the party sought to be held liable has assumed an obligation for the benefit of a third party. The statute does not purport to create a contract when no contract exists."

We find no error in the trial court's ruling, and the judgment is

*Affirmed.*