**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FOOD LION, INCORPORATED,
Plaintiff-Appellant,

v.

S. L. NUSBAUM INSURANCE AGENCY,
INCORPORATED; R. B. NASH FRANCIS,
JR.,                                                          No. 99-1058
Defendants-Appellees,

and

AMERICAN DIVERSIFIED INSURANCE
COMPANY,
Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CA-98-540-2)

Argued: October 28, 1999

Decided: January 12, 2000

Before MURNAGHAN, MOTZ, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Motz and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Robert William McFarland, MCGUIRE, WOODS, BAT-
TLE & BOOTHE, L.L.P., Norfolk, Virginia, for Appellant. Mary

Jane Hall, MEZZULLO & MCCANDLISH, P.C., Norfolk, Virginia; William Arthur DeVan, MEZZULLO & MCCANDLISH, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Douglas M. Foley, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Norfolk, Virginia, for Appellant.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

The plaintiff, Food Lion, Inc., appeals from the district court's order granting summary judgment in favor of defendants S.L. Nusbaum Insurance Agency, Inc. (Nusbaum) and R.B. Nash Francis, Jr. (Francis), on Food Lion's claims under § 38.2-1802 of the Code of Virginia and for professional negligence and breach of contract to Food Lion as a third-party beneficiary. For the reasons discussed below, we affirm.

I.

Food Lion entered into four construction contracts with John R. Kurfees and Associates (Kurfees) in which Kurfees was to construct three Food Lion stores in Virginia (the "Virginia Contracts") and one in North Carolina (the "North Carolina Contract"). The parties' contracts required Kurfees to obtain performance bonds to secure its contractual obligations. Kurfees hired Nusbaum and its employee, Francis, to locate an insurance carrier that would issue the bonds.

When Francis was unable to find an insurance carrier that would issue bonds to satisfy the requirements of Kurfees' contracts with Food Lion, he contacted a surplus lines broker, United Contractors Insurance Agency, that was soliciting bonds on behalf of American Diversified Insurance Co. (American). American issued the performance bonds to Kurfees, and Kurfees paid Nusbaum for each bond that American issued.

Before completing its work under the construction contracts, Kurfees filed bankruptcy under Chapter 11 on November 7, 1995. When

2

Kurfees refused to complete the projects, Food Lion demanded that American provide the funds necessary to complete performance under the contracts. Food Lion alleges that American defaulted on the performance bonds, causing Food Lion to suffer additional costs to complete the contracts. American has never satisfied any of its purported obligations under the bonds. American did not answer Food Lion's Complaint and has been in receivership in California since 1996.

On April 29, 1996, Kurfees filed a Complaint against Food Lion in the bankruptcy court seeking to recover amounts Food Lion allegedly owed on the four contracts. Food Lion counterclaimed, alleging a right of setoff for the anticipated costs of completing the contracts. Food Lion thereafter settled its dispute with Kurfees over the contracts. Food Lion agreed not to pursue any claims against the debtor's estate regarding the Virginia Contracts, and to submit the North Carolina Contract dispute to arbitration.[1] On December 18, 1996, the bankruptcy court entered an agreed order approving the compromise and settlement. Addressing the Virginia Contracts, which the court referred to as the "Tidewater Stores", the order states:

> [I]t is FURTHER ORDERED that Food Lion <u>shall not have claim</u> [sic] against the Debtor for its alleged costs to complete and credits due of $121,860.69 regarding the Tidewater Stores referenced in the Motion; it is
>
> FURTHER ORDERED that the Debtor shall not have any claim against Food Lion relating to the Harrisonburg Contract, the Roanoke Contract and the contracts relating to the Tidewater Stores referenced in the Motion.

Food Lion filed a three count Complaint against American, Nusbaum, and Francis on May 13, 1998. The Complaint alleged breach of contract against American, a violation of § 38.2-1802 of the Code of Virginia against Nusbaum and Francis, and negligence against Nusbaum and Francis. On October 9, 1998, Nusbaum and Francis filed a motion for summary judgment.

_____

[1] The arbitrator found that Food Lion was liable to Kurfees under the North Carolina Contract and awarded Kurfees $105,145.74 plus interest.

3

At the summary judgment hearing, the district court granted Food Lion leave to amend its Complaint to clarify its statutory claim (Count II), and to clarify that Count III was for professional negligence and breach of contract to Food Lion as a third-party beneficiary against Nusbaum and Francis. Food Lion filed its Amended Complaint on November 30, 1998.**2**

On December 9, 1998, the district court granted Nusbaum and Francis' motion for summary judgment. The district court held that the arbitration decision barred Food Lion's claim as to the North Carolina Contract. Regarding the Virginia Contracts, the court held that because Nusbaum and Francis' liability stemmed from the claims against American as the surety, they could not be liable if Food Lion had no claim against American. The district court then found that Food Lion's release of Kurfees operated as a release of American and, therefore, of Nusbaum and Francis. Food Lion then brought the instant appeal, arguing that it has viable claims against Nusbaum and Francis for damages sustained in completing the Virginia Contracts. Food Lion does not appeal the district court's ruling concerning the North Carolina Contract.

II.

We review the district court's grant of summary judgment <u>de novo</u>, viewing all facts and inferences in the light most favorable to Food Lion. <u>See Beall v. Abbott Labs.</u>, 130 F.3d 614, 618-19 (4th Cir. 1997). Count II of Food Lion's Complaint alleges a cause of action against Nusbaum and Francis under § 38.2-1802 of the Code of Virginia. Section 38.2-1802 states in relevant part:

> A. No person . . . shall solicit, negotiate, procure, or effect contracts of insurance in this Commonwealth on behalf of

_____

**2** The district court entered a default judgment against American for failing to respond to the original Complaint on November 20, 1998. On January 7, 1999, in response to a letter from the Deputy Attorney General of California, the district court reconsidered and set aside the entry of default against American. The January 7 order stayed all action by Food Lion against American until further order from the Superior Court of Orange County, California.

4

any insurer which is not licensed to transact the business of insurance in this Commonwealth. . . .

B. Any person violating the provisions of this section shall be guilty upon conviction of a Class 1 misdemeanor and punished for each offense. In addition, any person violating this section shall be (i) liable on any claim against any unlicensed insurer that arises out of a contract or policy solicited, negotiated, procured, or effected by the person or which the person assisted in soliciting, negotiating, procuring, or effecting, or (ii) punished in §§ 38.2-218 and 38.2-1831, or (iii) subject to both (i) and (ii).

Food Lion claims that Nusbaum and Francis violated § 38.2-1802 by procuring a contract of insurance with American, an insurer that was not licensed to transact business in Virginia. Food Lion thus argues that § 38.2-1802 also makes Nusbaum and Francis liable on any claim by Food Lion against American with respect to the performance bonds.

Food Lion's claim against Nusbaum and Francis under § 38.2-1802 fails because Food Lion does not have a valid claim against American. Food Lion's claim against American arose out of Kurfees' default under the construction contracts. Kurfees' default triggered American's obligations as a surety under the performance bonds. Food Lion, however, settled its dispute with Kurfees on December 18, 1997. The Bankruptcy Court's order memorializing the settlement stated that "Food Lion shall not have claim [sic] against the Debtor for its alleged costs to complete and credits due of $121,860.69 regarding the Tidewater Stores referenced in the Motion." Food Lion thus released Kurfees for all claims associated with the Virginia Contracts.

Food Lion's release of Kurfees also operated as a release of Kurfees' surety, American. Virginia law provides that "a release of the principal debtor by the creditor, by an absolute release of the debt, or by an obligatory extension of the time of payment, without the consent of the surety, releases the surety in toto." Conner v. West. 129 Va. 85, 105 S.E. 762, 766 (1921); see also Fugate v. Allen, 153 Va.

5

143, 149 S.E. 501, 502 (1929). Food Lion therefore released American from any liability on the Virginia Contracts by releasing Kurfees.

Food Lion's release of American bars any claim against Nusbaum and Francis under § 38.2-1802. Food Lion cannot hold Francis and Nusbaum liable for "any claim against an unlicensed insurer," when it has no claim against that insurer.

Food Lion raises three arguments in an attempt to avoid the consequences of its release of Kurfees. First, Food Lion argues that American would be equitably estopped from asserting the doctrine of release against Food Lion because of American's fraudulent conduct in issuing the performance bonds. Because Nusbaum and Francis allegedly stand in American's shoes, Food Lion argues that they also should be equitably estopped from raising the release as a defense.

An essential element of estoppel is that the injured party rely to its detriment on misrepresentations by the opposing party. See, e.g., Elmore v. Cone Mills Corp., 187 F.3d 442, 446 (4th Cir. 1999). Estoppel "is the consequence worked by operation of law which enjoins one whose action or inaction has induced reliance by another from benefiting from a change in his position at the expense of the other." Employers Commercial Union Ins. Co. of America v. Great American Ins. Co., 214 Va. 410, 200 S.E.2d 560, 562 (1973). Food Lion does not allege that it relied on representations by American in releasing Kurfees. Food Lion's release of Kurfees was completely unrelated to any of American's actions. Because Food Lion cannot establish reliance, American and, by extension, Nusbaum and Francis, are not equitably estopped from relying on Food Lion's release of Kurfees.

Second, Food Lion argues that Nusbaum and Francis cannot rely on the release of Kurfees because of the doctrine of"unclean hands." Unclean hands bars a party from receiving equitable relief because of that party's own inequitable conduct. See, e.g., Brown v. Kittle, 225 Va. 451, 303 S.E.2d 864, 867 (1983). Nusbaum and Francis do not request equitable relief. The doctrine of unclean hands therefore does not apply in the present case.

Finally, Food Lion argues that its release of Kurfees should not operate as a release of American because the release occurred as part

6

of a bankruptcy proceeding. Section 524(e) of the Bankruptcy Code provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Food Lion contends that § 524(e) protects Food Lion's right to recover from American and, therefore, Nusbaum and Francis under § 38.2-1802.

Food Lion's argument is without merit. Kurfees' debt to Food Lion was not "discharged"; rather, it was settled by an agreed order in the bankruptcy court. Section 524(e) does not preclude the consensual settlement of claims; it merely clarifies the effect of a discharge. In In re Arrowmill, 211 B.R. 497 (Bankr. D.N.J. 1997), the court held that "[W]hen a release of liability of a nondebtor is a consensual provision . . . agreed to by the effected creditor, it is no different from any other settlement or contract and does not implicate 11 U.S.C. § 524(e). A voluntary, consensual release is not a discharge in bankruptcy." Id. at 506; see also In re Specialty Equip. Cos., 3 F.3d 1043, 1047 (7th Cir. 1993) ("[S]ection 524(e) provides only that a discharge does not affect the liability of third parties. This language does not purport to limit or restrain the power of the bankruptcy court to otherwise grant a release to a third party."); In re Dow Corning Corp., 198 B.R. 214, 243 (Bankr. E.D. Mich. 1996) ("By its language then, § 524(e) is only implicated when the debtor is receiving a discharge."). Food Lion therefore cannot rely on§ 524(e) to avoid the consequences of its release of Kurfees.

In sum, Food Lion's release of Kurfees bars any claim against American as Kurfees' surety. Because Food Lion has no claim against American, it cannot hold Nusbaum and Francis liable under § 38.2-1802 for procuring insurance from an unlicensed surety. We therefore affirm the district court's grant of summary judgment in favor of Nusbaum and Francis on Count II of Food Lion's Complaint.

III.

Count III of Food Lion's Complaint alleges a cause of action against Nusbaum and Francis for professional negligence and breach of contract to Food Lion as a third-party beneficiary. The district court granted Nusbaum and Francis' motion for summary judgment on Count III of Food Lion's Complaint because it found that Food

Lion's release of Kurfees barred any claim against Nusbaum and Francis arising out of the Virginia Contracts. Because we hold that Food Lion was not a third-party beneficiary of the contract between Kurfees and Nusbaum, we need not decide whether Food Lion's release of Kurfees bars Food Lion's claim against Nusbaum and Francis for professional negligence and breach of contract to Food Lion as a third-party beneficiary.

Privity of contract is an essential element of an action seeking damages for economic loss resulting from the negligent performance of a contractual commitment. See Ward v. Ernst & Young, 246 Va. 317, 435 S.E.2d 628, 631 (1993). Food Lion was not a party to the contract between Kurfees and Nusbaum in which Nusbaum agreed to locate a bonding company that would act as a surety for Kurfees' obligations to Food Lion. Food Lion therefore must establish that it was a third-party beneficiary of the contract between Kurfees and Nusbaum to maintain its cause of action.

Virginia law provides that "[t]he third party beneficiary doctrine is subject to the limitation that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him." Professional Realty Corp. v. Bender, 216 Va. 737, 222 S.E.2d 810, 812 (1976). Third-party beneficiaries must be intended beneficiaries of a contract; mere incidental beneficiaries have no right to enforce a contract. Therefore, a "clear intent to benefit the third person must appear to enable him to sue on the contract; incidental beneficiaries cannot maintain an action thereon." Valley Landscape Co. v. Rolland, 218 Va. 257, 237 S.E.2d 120, 122 (1977) (quoting N.-P. Newspapers v. Stott, 208 Va. 228, 156 S.E.2d 610, 612 (1967)).

In Copenhaver v. Rogers, 238 Va. 361, 384 S.E.2d 593 (Va. 1989), the beneficiaries of a will asserted a cause of action for professional negligence against the attorney who drafted the will. The beneficiaries argued that they were third-party beneficiaries of the testator's contract with the attorney. The court disagreed. See id. at 595-96. The contract between the testator and the attorney benefitted the attorney, through his compensation, and the testator, through the disposition of his estate. The will beneficiaries may have stood to benefit from the will, but they were not intended beneficiaries of the attorney-client contract. The court therefore held that "[t]here is a critical difference

8

between being the intended beneficiary of an estate and being the intended beneficiary of a contract between a lawyer and his client." Id. at 596; see also Valley Landscape, 237 S.E.2d at 121-22 (general contractor on a construction project not a third-party beneficiary of a contract between the owner of the property and the architect of the construction project); Professional Realty, 222 S.E.2d at 812 (real estate broker not a third-party beneficiary of the contract between the buyer and seller of the property).

In the present case, Food Lion relies on the contracts between Kurfees and Nusbaum that mention Food Lion. For instance, an August 8, 1994 contract between Kurfees and Nusbaum states:

> It is hereby agreed and understood that S.L. Nusbaum Insurance Agency, Inc. will be paid $1,578 for services rendered concerning the placement of $717,414 performance and payment bonds on behalf of John R. Kurfees and Associates, Inc. for Food Lion store #405, Southampton Shopping Center, Franklin, Va.
>
> Please sign as acknowledgment of this agreement below, and return to my attention at your earliest convenience.

The other contracts between Kurfees and Nusbaum contain similar references to Food Lion.

Food Lion stood to benefit from Kurfees' contracts with Nusbaum; however, the parties clearly did not intend to confer a benefit on Food Lion. Kurfees hired Nusbaum to obtain performance bonds with an acceptable surety. Nusbaum's job was to serve Kurfees by allowing it to complete the deal with Food Lion. It strains logic, however, to suggest that Food Lion was an intended beneficiary of the contracts. The contracts mention Food Lion, but only by way of identifying the deal for which each bond was necessary. The benefits in the contracts went to Nusbaum, who was compensated, and Kurfees, who was able to satisfy a condition precedent and complete the deal with Food Lion.

Food Lion attempts to establish that it was a third-party beneficiary by pointing to a hypothetical posited by the court in Copenhaver. The court set up the following hypothetical:

9

> [A] client might direct his lawyer to put his estate in order and advise his lawyer that his one overriding intent is to ensure that each of his grandchildren receive one million dollars at his death and that unless the lawyer agrees to take all steps necessary to ensure that each grandchild receives the specified amount, the client will take his legal business elsewhere. In this second example, if the lawyer agrees to comply with these specific directives, one might fairly argue that each grandchild is an intended beneficiary of the contract between the client and the lawyer.

Copenhaver, 384 S.E.2d at 597. Food Lion's argument might have merit if Kurfees had told Nusbaum that its overriding intent was to make sure Food Lion was fully compensated if Kurfees defaulted. Kurfees had no such intent; instead, Kurfees' intent was to close the deal with Food Lion, an opposing party. Nusbaum was Kurfees' agent who was hired to serve Kurfees' interests. Food Lion's third-party beneficiary argument thus fails as a matter of law.

Because Food Lion cannot establish that it was a third-party beneficiary of the contracts between Kurfees and Nusbaum, it cannot maintain a claim against Nusbaum and Francis for professional negligence and breach of contract to Food Lion as a third-party beneficiary. We therefore affirm the district court's grant of summary judgment in favor of Nusbaum and Francis on Count III of Food Lion's Complaint.

IV.

For the reasons discussed above, we affirm the district court's order granting of summary judgment in favor of Nusbaum and Francis.

AFFIRMED

10