**KPMG PEAT MARWICK, L.L.P., Plaintiff,**

v.

**ESTATE OF NELCO, LTD., INC., Defendant.**

**Civ.A. No. 3:00CV206.**

United States District Court, E.D. Virginia, Richmond Division.

June 28, 2000.

Hugh McCoy Fain, III, Spotts, Smith, Fain & Buis, P.C., Richmond, VA, for KPMG Peat Marwick LLP.

James Joseph Burns, Williams, Mullen, Clark & Dobbins, Samuel Walter Hixon, III, Williams, Mullen, Clark & Dobbins, Richmond, VA, for Estate of Nelco, Ltd., by and through Ezra H. Cohen, Chapter 7 Trustee in Bankruptcy.

## *MEMORANDUM OPINION*

SPENCER, District Judge.

THIS MATTER is before the Court on a Motion for Leave to Appeal brought by Plaintiff KPMG PEAT MARWICK, L.L.P. (herein "KPMG"). For the reasons discussed below, the Motion is DENIED.

## I. Background

This case arises from a multimillion dollar bank fraud scheme. Third-party and Phillip Morris employee Edward J. Reiners (herein "Reiners") persuaded Defendant NELCO, LTD. (herein "Nelco"), a computer leasing firm which had leased computers to Phillip Morris in the past, to use proceeds from loans to "purchase" computers from a New York computer reseller (herein "CCS," one of Reiners' co-conspirators) and then "lease" those computers to Phillip Morris under the terms of a Master Lease. (Mot. § I; Resp. § I.). These computers were supposedly earmarked for a secret Phillip Morris project called "Project Star"; reflecting the secrecy of Project Star, the Master Lease and resulting schedules were often referred to as the "Stealth Leases." (Resp. § I.). Under this arrangement, the banks would disburse funds directly to CCS, which was required to then ship the computers to Phillip Morris. (Mot. § I.). KPMG provided tax and financial accounting services to Nelco during this time period. (*Id.;* Resp. § I.). In reality, no computers were ever purchased or delivered, and Reiners diverted the loan proceeds for his personal benefit. (Mot. § I.). KPMG did not discover the fraud; their duties (if any) to do so are at the center of the instant litigation, as well as KPMG's methods of accounting and information verification. (*Id.*). The banks learned eventually that the Stealth Leases were fraudulent on or about March 17, 1996, and they demanded that Nelco repay the loans immediately. (*Id.;* Bankr.Mem. Op. at 3.). Nelco refused and filed for Chapter 11 bankruptcy protection on March 25, 1996, having committed more than $300 million in loan proceeds to the Stealth Leases.[1] (Mot. § I.). This filing was converted to a Chapter 7 case on January 7, 1997; the Bankruptcy Court (Judge Tice) noted that as a consequence of this conversion, "Nelco lost the full value of the company as a going concern and was forced to liquidate its assets at a loss." (Bankr.Mem. Op. at 3.).

The Bankruptcy Trustee (herein the "Trustee") filed a complaint against KPMG on July 16, 1999, in which it brought three claims of accountant malpractice and three claims for breach of contract (herein collectively the "Complaint"). (*Id.* at 1.). There is some dispute as to whether the Complaint was brought on behalf of the

---

1. The Bankruptcy Court found that the $300 million sum was comprised of the following individual loans—"in 1993 Signet financed $5 million, in 1994 Signet financed $43 million, in 1995 Signet and NationsBank financed $217 million, and in 1996 NationsBank financed $65 million." (Bankr.Mem. Op. at 3.).

banks, or on behalf of the Nelco bankruptcy estate; this dispute shall be discussed in greater detail below. The Complaint seeks damages in excess of $125 million, for the years 1993 through 1995. (*Id.*). KPMG moved to dismiss the Trustee's complaint on the following grounds:

(1) the trustee lacks standing to pursue the damage claims on behalf of Nelco against KPMG because Nelco did not suffer, and could not suffer, those damages; (2) the trustee lacks standing to pursue damage claims of the creditor banks consisting of the unpaid amounts on the nonrecourse loans made to Nelco to finance the fraudulent leases; (3) the trustee's claims for accountant malpractice and breach of contract stemming from the 1993 audit (Counts I and IV) are barred by the Statute of Limitations; and (4) the trustee's claim arising from the incomplete 1995 audit (Counts III and IV) should be dismissed because the trustee cannot show a causal link between the incomplete audit work and any loss suffered by Nelco.

(*Id.* at 5.). The Bankruptcy Court rejected all four arguments and denied the motion on March 10, 2000. KPMG filed the instant Motion for Leave to Appeal on March 20, 2000.

## II. Standard of Review

Federal district courts are empowered to "hear appeals from final judgments, orders, and decrees, and with leave of court, from interlocutory orders and decrees, of bankruptcy judges...." 28 U.S.C. § 158(a). Non-final orders or decrees are not appealable as a matter of right, however. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (*citing* The Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b)). In seeking leave to appeal an interlocutory order or decision, the appellant must demonstrate "that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand*, 437 U.S. at 475, 98

S.Ct. 2454 (*citing Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir.1972)). When deciding whether to grant leave to appeal an interlocutory order or decree of a bankruptcy court, the district court may employ an analysis similar to that applied when certifying interlocutory review by the circuit court of appeals under 28 U.S.C. § 1292(b). *Atlantic Textile Group, Inc. v. Neal*, 191 B.R. 652, 653 (E.D.Va. 1996) (citations omitted). Under this analysis,

leave to file an interlocutory appeal should be granted only when 1) the order involves a controlling question of law, 2) as to which there is substantial ground for a difference of opinion, and 3) immediate appeal would materially advance the termination of the litigation.

*Id.* (citations omitted). The Fourth Circuit has stated regarding the term "controlling question of law" that "[c]ertainly the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin v. CSX Transp. Inc.*, 873 F.2d 1438, 1989 WL 42583, *5 (4th Cir.1989) (unpublished).

When considering an appeal from the bankruptcy court, the district court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. *In re Johnson*, 960 F.2d 396, 399 (4th Cir.1992). Put differently, decisions as to fact "made in the exercise of a bankruptcy court's discretion will not be set aside unless there is plain error or an abuse of discretion." *See In re Suthers*, 173 B.R. 570, 572 (W.D.Va.1994) (citing *In re Lawless*, 79 B.R. 850, 852 (W.D.Mo. 1987)). District courts will review *de novo* the bankruptcy court's conclusions of law, however. *See In re Plumlee*, 236 B.R. 606, 609 (E.D.Va.1999) (citing *In re Johnson*, 960 F.2d at 399).

## III. Analysis

To grant leave to appeal the Bankruptcy Court's denial of the Motion

to Dismiss, the Court must find that the denial involves a controlling question of law, as to which there is substantial ground for a difference of opinion, and that an immediate appeal of the Bankruptcy Court's denial of the Motion to Dismiss would materially advance the termination of the litigation. The Eastern District ruled in *Atlantic Textile Group* that all three elements must be satisfied in order to grant leave to appeal an interlocutory decision. *Atlantic Textile Group*, 191 B.R. at 653. If any one element is unsatisfied, leave to appeal cannot be granted. In addition, the language of *Atlantic Textile* demonstrates that the second element is related to and dependent upon the first element—the denial must involve a controlling question of law, and there must be substantial ground for a difference of opinion *as to that controlling question of law,* not generally as to the denial itself. This makes sense, for to read the second element as independent of the first element— i.e., that the court need only find a disagreement as to the Bankruptcy Court's ultimate decision, not as to the questions of law involved—renders the second element essentially meaningless. Opposing parties will usually have divergent opinions on any given decision by a court, but the courts themselves may or may not disagree as to the law underlying that decision. In the interest of judicial economy, it is appropriate that district courts not deem the second element satisfied whenever parties disagree as to a Bankruptcy Court's interlocutory order, but rather only where substantial ground for disagreement exists as to the controlling issues of law that informed the order. Doing so restricts interlocutory appeals to those cases in which the parties earnestly dispute the law, not simply the result. With this understanding, the three factors are discussed in turn.

### A. Whether the Denial of the Motion to Dismiss Involved a Controlling Question of Law

█ The Court must determine first whether the Bankruptcy Court's denial of the Motion to Dismiss involved a controlling question of law, as interpreted by the Fourth Circuit in *Fannin* to mean a narrow, dispositive question of pure law. *See Fannin,* 873 F.2d 1438, 1989 WL 42583 at *5. KPMG suggests the following question meets this standard: "[w]hether a bankruptcy trustee has standing to pursue claims to vindicate damages suffered by creditors in their individual capacities." (Mot. § II.). According to KPMG, any challenge to the Trustee's standing to bring the Complaint "[o]bviously" qualifies as a controlling question of law. (*Id.* § III(1).). KPMG offers no further analysis to support this argument.

█ Nelco responds in the main that the question proposed by KPMG is actually more a question of fact than of law, and thus cannot satisfy the first requirement for interlocutory review. (Resp. § III(1).). Nelco does not explain why the standing issue is more a question of fact than of law, however, and there are problems with the cases offered in support. Citing non-binding case law, Nelco states that "if a decision is merely an application of well-settled law to the facts at hand, interlocutory review is not appropriate." (*Id., citing In re Matter of Hamilton,* 122 F.3d 13, 14 (7th Cir.1997); *Link v. Mercedes–Benz of N. Am., Inc.,* 550 F.2d 860, 863 (3rd Cir. 1977).). Nelco cites a New York district court decision for the proposition that interlocutory review is similarly inappropriate for "fact-based legal issues," although that court's decision appears to speak only to—and to prohibit—re-litigation of a district court's finding of genuine issues of material fact barring entry of summary judgment for the appealing party. (Resp. § III(1), *citing DiMarco v. Rome Hospital,* 899 F.Supp. 91, 95 (N.D.N.Y.1995).). Such is not the case here, however, as the matter sought to be appealed is not the denial of a motion for summary judgment, but rather the denial of a motion to dismiss. This distinction is critical, because motions to dismiss test only the law under-

lying claims, not the facts that support them. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Spell v. McDaniel,* 591 F.Supp. 1090 (E.D.N.C.1984). By contrast, courts considering motions for summary judgment must engage in an extensive factual inquiry to determine whether genuine issues of material fact exist, in addition to deliberations as to whether the movant is entitled to judgment as a matter of law. *Fed. R.Civ.P.* 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). *DiMarco* is therefore not persuasive.

■■■ To bolster its position, Nelco cites an Eastern District of Virginia case in which the court denied interlocutory review. (Resp. § III(1).). In *Brooks v. Farm Fresh,* plaintiff's counsel sought reconsideration or certification for interlocutory review of its disqualification by the district court for a conflict of interest. (*Id., citing Brooks v. Farm Fresh, Inc.,* 759 F.Supp. 1185 (E.D.Va.1991).). In rejecting the request in the alternative for certification for interlocutory review, the district court found that the question of law presented in that case was "grounded in the specific facts of the case, and cannot be divorced from the facts in such a way that it is a 'controlling issue of law.'" *Brooks,* 759 F.Supp. at 1198. This case illustrates that certain questions of law may indeed be so fact-intensive as to make interlocutory review inappropriate, but (as noted above) Nelco does not explain how the question of law asserted here by KPMG is similarly fact-intensive; Nelco merely asserts that this is so. Certainly the denial of a motion to dismiss is far less fact-intensive than the denial of a motion for summary judgment, and a reasonable examination suggests that the actual question presented by KPMG is not fact-intensive. As stated above, KPMG argues that the following question is a controlling

question of law: "[w]hether a bankruptcy trustee has standing to pursue claims to vindicate damages suffered by creditors in their individual capacities." (Mot. § II.). The answer to this question should not hinge upon any of the specific facts of this case, but should rest instead upon principles of bankruptcy law applicable to all bankruptcy cases in which third-party creditors might seek to have the trustee litigate their claims. This is a narrow, dispositive question of pure law as contemplated by the Fourth Circuit in *Fannin. Brooks* is therefore of little import.

Nelco argues finally that KPMG has failed to assert a controlling question of law because the Bankruptcy Court applied the "unremarkable proposition" from *Caplin* (reportedly, that a bankruptcy trustee may assert only those claims that belong to the bankruptcy estate, not the claims of its creditors) to find that the claims in the Complaint were asserted properly by the Trustee. (Resp. § III(1), *citing Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972).). As a preliminary matter, there appears to be no express reference whatsoever to the *Caplin* decision anywhere within the Bankruptcy Court's opinion, much less within its specific rejection of KPMG's trustee standing argument (which is offered here by KPMG as the controlling question of law). To determine whether *Caplin* nonetheless renders KPMG's question of law non-controlling, however, the Court must consider both *Caplin* and the Bankruptcy Court's analysis of the trustee standing issue. In *Caplin,* the Supreme Court was asked to determine whether a bankruptcy trustee could bring a claim against an indenture trustee on behalf of holders of debentures issued by the debtor (i.e., on behalf of third-party creditors), based upon that indenture trustee's failure to maintain an asset-liability ratio of 2:1. *Caplin,* 406 U.S. at 417–21, 92 S.Ct. 1678. The Supreme Court ruled that the bankruptcy trustee lacked standing to press a claim on behalf of those creditors for the following

three reasons: (1) because bankruptcy trustees are not authorized by statute to collect sums not owed to the bankruptcy estate; (2) because there was evidence that the debtor was as much to blame for losses suffered by the creditors as was the indenture trustee; and (3) because a suit by the bankruptcy trustee would unduly complicate or interfere with the right of these creditors to bring their own claims against the indenture trustee. *Id.* at 428–34, 92 S.Ct. 1678.

█ Turning to the Bankruptcy Court's rejection of KPMG's argument that the Trustee lacked standing to sue on the banks' behalf, the Bankruptcy Court appears to sidestep *Caplin* by ruling that the banks have no claims to assert against KPMG, and thus logically the Trustee was not attempting to assert claims on their behalf but rather on behalf of Nelco's estate. (Bankr.Mem. Op. at 9.). The Bankruptcy Court made this ruling after examining Virginia law, which holds that "[p]rivity of contract is an essential element of an action seeking damages for economic loss resulting from the negligent performance of a contractual commitment." (*Id., citing Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.,* 202 F.3d 223, 229 (4th Cir.2000) (*citing Ward v. Ernst & Young,* 246 Va. 317, 435 S.E.2d 628, 631 (1993)).). Since the banks were not parties to the Nelco–KPMG auditing contract, the Bankruptcy Court reasoned that they had no claims for economic loss arising from KPMG's failure to uncover the fraud underlying the Stealth Leases. (Bankr.Mem. Op. at 9.). The Bankruptcy Court concluded that "the claims asserted by the trustee are Nelco's claims against KPMG for malpractice and breach of contract." (*Id.*). The Bankruptcy Court did not look to the Complaint itself, which makes no express reference to the banks and purports to be brought on behalf of the bankruptcy estate. *See generally* Compl.

█ The Bankruptcy Court's reasoning is problematic. The *Food Lion* decision cited by the Bankruptcy Court

recognizes that an exception to the privity requirement exists for intended third-party beneficiaries. *Food Lion,* 202 F.3d at 229. According to the Fourth Circuit,

> Virginia law provides that "[t]he third party beneficiary doctrine is subject to the limitation that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him." *Professional Realty Corp. v. Bender,* 216 Va. 737, 222 S.E.2d 810, 812 (1976). Third-party beneficiaries must be intended beneficiaries of a contract; mere incidental beneficiaries have no right to enforce a contract. Therefore, a "clear intent to benefit the third person must appear to enable him to sue on the contract; incidental beneficiaries cannot maintain an action thereon." *Valley Landscape v. Rolland,* 218 Va. 257, 237 S.E.2d 120, 122 (1977) (*quoting N–P Newspapers v. Stott,* 208 Va. 228, 156 S.E.2d 610, 612 (1967)).

*Food Lion,* 202 F.3d at 229. Neither party has submitted a copy of the Nelco–KPMG auditing contract for the Court's consideration, but it is reasonable to assume that banks or other lending entities are intended third-party beneficiaries of a borrower's contract with an accounting firm, especially where the borrower is a company seeking hundreds of millions of dollars from those banks or other lending entities. Banks require assurance that commercial loans aren't being squandered or misappropriated. Accounting firms can provide such assurance. If the banks are indeed the intended third-party beneficiaries of the Nelco–KPMG auditing contract, the privity requirement does not apply, and thus the banks—in theory—could enjoy claims against KPMG for its failure to uncover the fraud. This does not mean that the Trustee was suing on the banks' behalf, but the Bankruptcy Court's failure to address this possibility undercuts its ruling on the standing issue.

█ The Court finds that the issue of whether a bankruptcy trustee has standing

to pursue claims to vindicate damages suffered by creditors in their individual capacities does indeed constitute a controlling question of law. This is a narrow, dispositive question of pure law. Nelco does not demonstrate, nor does it appear, that the question is so fact-intensive as to make interlocutory review inappropriate. Further, the Bankruptcy Court's decision on this issue avoids *Caplin* by failing to determine whether a valid exception to Virginia's privity requirement applies which would have permitted the banks to assert claims against KPMG. A controlling question of law therefore exists.

### B. Whether Substantial Ground for a Difference of Opinion Exists as to this Controlling Question of Law

The Court must determine next whether substantial ground for a difference of opinion exists as to the controlling question of law identified above. KPMG argues that such ground does exist, because in denying the Motion to Dismiss the Bankruptcy Court allegedly "disregarded the well-established rule that a trustee lacks standing to sue a third party on behalf of creditors of the estate." (Mot. § III(2), *citing Caplin,* 406 U.S. at 416, 92 S.Ct. 1678; *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1093 (2nd Cir.1995); *E.F. Hutton & Co. v. Hadley,* 901 F.2d 979, 984 (11th Cir.1990); *Williams v. California 1st Bank,* 859 F.2d 664, 666 (9th Cir.1988); *In re Ozark Restaurant Equip. Co.,* 816 F.2d 1222, 1228 (8th Cir.1987); *Acme Boot Co. v. Tony Lama Interstate Retail Stores,* 929 F.2d 691, 1991 WL 39457, at *6 (4th Cir.1991) (unpublished).). KPMG repeats its criticism that the Bankruptcy Court merely held, "without citation, that '[b]ecause the banks apparently have no claims to assert against KPMG, it follows that the trustee is not improperly asserting the banks' claims." (Mot. § III(2), *quoting* Bankr. Mem. Op. at 9.). This reasoning is flawed, KPMG asserts, because the *Caplin* line of authority reportedly holds that the trustee lacks standing to assert the claims of

third-party creditors when it cannot distinguish the bankruptcy estate's damages from those incurred by those third-party creditors. (Mot. § III(2).).

KPMG looks to *Hirsch* for support. In *Hirsch,* the Second Circuit stated the following:

> Recognizing that he cannot assert claims against the defendants on behalf of the creditors, the trustee alleges damage to the debtors, to the extent of the unpaid obligations of the debtors to the creditors. Yet, the trustee has not alleged any distinct way in which the debtors were injured by the asserted wrongdoing of the defendants. Rather, the trustee alleges that the debtors suffered injuries identical to those of the creditors. Under these circumstances, it is the individual creditors, rather than the trustee, who may seek recovery from the defendants. Accordingly, the trustee lacks standing to assert these claims.

*Hirsch,* 72 F.3d at 1090–91. Based upon this rationale, and the Trustee's alleged agreement that "over 99 percent of the claims against the estate can be attributed to the Creditor Banks," KPMG argues that "substantial ground for difference of legal opinion" exists as to the question, permitting an interlocutory appeal. (Mot. § III(2).).

 Although KPMG expounds at length as to the supposed mistakes of the Bankruptcy Court, an interlocutory appeal will lie only if a difference of opinion exists *between courts* on a given controlling question of law, creating the need for an interlocutory appeal to resolve the split or clarify the law. *McDaniel v. Mehfoud,* 708 F.Supp. 754, 756 (E.D.Va.1989) (in finding no case conflict or circuit split supporting the defendants' claim of substantial ground for difference of opinion, Judge Merhige stated that "[t]he only apparent difference in opinion defendants demonstrate is between their counsel and the Order of this Court. Counsel's disagreement with the Court is simply not reason enough to grant

an interlocutory appeal."); *Oyster v. Johns–Manville Corp.*, 568 F.Supp. 83, 86 (E.D.Pa.1983) (whether substantial ground for a difference of opinion exists "may be demonstrated by adducing 'conflicting and contradictory opinions' of courts which have ruled on the issue."); *Hulmes v. Honda Motor Co.*, 936 F.Supp. 195, 208 (D.N.J.1996) ("A party's disagreement with the district court's ruling does not constitute a 'substantial ground for difference of opinion' … Rather, the difference of opinion must arise out of genuine doubt as to the correct legal standard.")

■■■■■ *McDaniel* demonstrates clearly that for an interlocutory appeal to lie, it matters not whether the lower court simply got the law wrong (at least in the opinion of the appealing party); such a mistake could presumably be corrected on appeal after the lower court issues its final ruling. What matters is whether courts themselves disagree as to what the law is. There can be little doubt that the *Caplin* line of authority precludes bankruptcy trustees from asserting the claims of third party creditors, and thus the controlling question of law offered by KPMG is, for these purposes, rhetorical. It has been answered repeatedly in the negative: clearly, bankruptcy trustees may not assert the claims of third party creditors. KPMG replies that the Bankruptcy Court's supposed decision to ignore *Caplin* (by not discussing it expressly) creates a substantial ground for difference of opinion. (Reply § I.). This is simply incorrect. It is possible that the Bankruptcy Court got the law wrong, or that it misapplied the law to these facts; if so, the Bankruptcy Court fights a losing battle, for the *Caplin* line of authority is clear. This battle must be joined at the appellate level, however, not via interlocutory review.

Nelco continues by arguing that the Bankruptcy Court distinguished this case from *Caplin* and its progeny by stating that "the proofs of claim filed by the Creditor Banks 'evidence a substantial compo-nent of the harm *suffered by Nelco.*'" (Resp. § III(2), *quoting* Mem. Op. at 7 (emphasis added).). Nelco contends also that the cases cited by KPMG are factually inapposite, because "they are all cases in which the trustee was suing on claims of creditors, rather than on claims of the debtor corporation." (Resp. § III(2) (citations omitted).). The Court need not delve into every case cited by KPMG, however, for it is apparent that substantial ground for a difference of opinion as to the controlling question of law does not exist.

## C. Whether an Immediate Appeal Would Materially Advance the Termination of the Litigation

The Court need not determine whether an interlocutory appeal would materially advance the termination of this litigation, as such an interlocutory appeal is prohibited here due to the lack of substantial ground for a difference of opinion as to the controlling question of law.

## IV. Conclusion

For these reasons, an interlocutory appeal is inappropriate. The Motion for Leave to Appeal is therefore DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

And it is SO ORDERED.