## CIRCUIT COURT OF THE CITY OF ROANOKE

Joseph A. Bishop,
Executor of the Estate of
Eva Rachel Bishop,
deceased

v.

Medical Facilities of Am. XLVII(47), L.P.,
t/a The Berkshire Healthcare Center, et al.

June 25, 2004

Case No. CL04-55

BY JUDGE JAMES R. SWANSON

This case presents on the Defendants'[1] Plea in Bar, Motion to Compel Arbitration pursuant to Va. Code § 8.01-581.02, and Motion to Dismiss pursuant to Va. Code § 8.01-577(B).[2] In making the determinations that follow, the Court has had the benefit of the arguments advanced and memoranda filed by counsel and will consider as stipulated the following evidentiary and procedural facts:

---

[1] For purposes hereof, both defendants named in the motion for judgment shall hereafter be collectively referred to as the "Defendant."

[2] By agreement of counsel, issues pertaining to the proper corporate identity of the Defendant and whether the subject contract is unconscionable or otherwise unenforceable as an adhesion contract are reserved for future determination.

1. Joseph A. Bishop, also known as Joe Bishop, is the son of Eva Rachel Bishop, also known as Eva Bishop.

2. On August 9, 2002, Eva Bishop was admitted to the Defendant's healthcare center where she remained a resident continuously until her death on September 15, 2002.

3. At the time of Eva Bishop's admission, Joseph A. Bishop signed the admission documents because his mother "lacked the physical ability and mental capacity to do so."

4. At the time of Eva Bishop's admission, Joe Bishop held her power of attorney.

5. Among the documents signed incident to Eva Bishop's admission was a three page "Medical Facilities of America Business Contract"[3] dated August 9, 2002, between Defendant Healthcare Center, referred to in the contract as the "Facility," and Joe Bishop, referred to in the contract as the "Responsible Party." The contract was entered in consideration of healthcare services to be provided to Eva Bishop, who was referred to in the contract as the "Resident." The contract was prepared by the Defendant. The contract was signed by the Defendant and Joseph A. Bishop and was not signed by Eva Bishop. The contract contained the following pertinent provisions:

I. *Agreement of the Parties*

A. The Healthcare Center shall provide room, board, and nursing care as directed by the Resident's physician and as required by law for the health, welfare, and benefit of the Resident. . . .

VI. *Binding Arbitration*

A. Except as set forth below, Resident and Facility agree that ALL CLAIMS, DISPUTES, OR DISAGREEMENTS between them (or their respective successors, assigns, or representatives) that Resident and Facility are unable to resolve between themselves shall be submitted to BINDING ARBITRATION in accordance with the Healthcare Claims Settlement Procedures or the Commercial Dispute Resolution Procedures of the American Arbitration Association (as appropriate) then in effect. Such claims, disputes, or disagreements may arise from or relate to: (i) the Admissions

---

[3] The August 9, 2002, Business Contract, a copy of which was attached as Exhibit 1 to the Defendant's Memorandum in Support of Plea in Bar and Motion to Compel Arbitration and to Dismiss Motion for Judgment, is incorporated herein by reference. Unless otherwise noted, all references herein to the "contract" shall refer to the August 9, 2002, Business Contract.

Contract, (ii) the Business Contract, or (iii) services provided to the residents by Facility including but not limited to allegations of neglect, abuse, negligence, or malpractice. . . .

E. During the pendency of any arbitration proceeding, Facility and Resident shall continue to perform the respective obligations under the Admissions and Business Contracts, subject to the right of either party to terminate this Admissions Contract. The obligation of the Facility and Resident to arbitrate their claims, disputes or disagreements shall survive the termination of this Agreement.

F. The Resident understands that he/she had the right to litigate disputes in a court of law and that by signing this Admissions Contract he/she is waiving such right, including any right to trial by jury and stating that he/she prefers to resolve any dispute through arbitration. . . .

IX. *Binding Effect*

This Business Contract shall be for the benefit of and shall be binding upon the parties hereto and their respective representatives, successors, and permitted assigns.

6. The arbitration provision contained in the August 9, 2002, Business Contract complied with Va. Code § 8.01-581.12.

7. Joseph A. Bishop qualified as the Executor of Eva Bishop's estate on October 11, 2003.

8. Joseph A. Bishop, as Executor of his mother's estate, did not exercise the right to withdraw from arbitration within sixty days of his qualification as permitted by the August 9, 2002, Business Contract and as contemplated by Va. Code § 8.01-581.12.

9. On or about February 13, 2004, Joseph A. Bishop, as Executor of the Estate of Eva Bishop, instituted the instant wrongful death action against the Defendant, alleging that the Defendant's negligent care of his mother resulted in her death.

*Issue*

Succinctly, the issue now before the Court is whether the wrongful death action filed by the Executor of the Estate of Eva Bishop is subject to a mandatory arbitration provision contained in a nursing home care contract which Eva Bishop did not sign but which was clearly entered into for her benefit.

In support of its motions, the Defendant avers that Joseph Bishop signed the contract as the agent and authorized representative of Eva Bishop since Joseph Bishop was her son and held her power of attorney and because Eva Bishop was physically and mentally unable to sign the contract herself. The Defendant also argues that the allegations of negligence underlying the Plaintiff's wrongful death action occurred prior to Eva Bishop's death, are claims that arise from or are related to "services provided to the Resident by Facility including but not limited to allegations of neglect, abuse, negligence, or malpractice," and, as such, fall within the contractual ambit of the arbitration provision of the contract. Finally, the Defendant contends that, even if Eva Bishop is determined not to have been a party to the contract, the Plaintiff should nevertheless be bound by the arbitration provision in the contract because Eva Bishop was a third-party beneficiary to the contract.

The Plaintiff, on the other hand, urges the Court to conclude that, since Eva Bishop did not sign the contract, she was not a party to the contract and that, as a result, neither she nor her personal representative is bound by the arbitration provision contained therein. The Plaintiff further contends that the arbitration provision is not enforceable because the contract terminated upon the death of Eva Bishop, the Estate of Eva Bishop came into existence only after the contract had terminated, and, due to its nature, the cause of action for wrongful death did not arise until after the contract's termination.

*Opinion*

Clearly, arbitration provisions are favored in Virginia and such provisions contained in an otherwise valid contract will be upheld as binding on the parties to the contract. *TM Delmarva Power v. NCP of Va.*, 263 Va. 116 (2002); see Va. Code § 8.01-581.01. It is well recognized that "the extent of the duty to arbitrate, just as the initial duty to arbitrate at all, arises from contractual undertakings." *Doyle & Runell, Inc. v. Roanoke Hospital Association*, 213 Va. 489, 494 (1973). Thus, an arbitration agreement, like any other contract, must be measured against recognized principles of contract law. The party seeking to compel arbitration bears the burden of establishing the existence of the contract requiring arbitration and, incident thereto, bears the burden of identifying the parties to the contract.

A. *Agency*

In the instant case, it is uncontroverted that Eva Bishop did not sign the contract. The Defendant contends that Eva Bishop was nonetheless a party to the contract because Joe Bishop signed the contract as her agent. An agency

relationship is "a fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and be subject to his control, and the other person's manifestation of consent to so act." *Reistroffer v. Person*, 247 Va. 45, 48 (1994). "The law indulges no presumption that an agency exists. On the contrary, one is legally presumed to be acting for himself and not as the agent of another." *Raney v. Barnes Lumber Corp.*, 195 Va. 956, 966 (1954). An agency relationship "may be inferred by the conduct of the parties and from the surrounding circumstances." *Accordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 263 Va. 377, 384 (2002). The power of control, or its absence, is an important consideration in determining whether an agency relationship exists. See *Reistroffer v. Person, supra*. In any event, the party alleging an agency relationship has the burden of proving its existence. *Allen v. Lindstrom*, 237 Va. 489, 496, cert. denied, 493 U.S. 849 (1989).

Here, the contract was between the Defendant "Facility" and Joe Bishop, the "Responsible Party," and was executed as such. By its terms, the contract conferred benefits and imposed liabilities upon both the Facility and the Responsible Party. On its face, the contract differentiated between Joseph Bishop and Eva Bishop by conferring upon each a separate and distinct designation. The contract designated Joseph Bishop as the "Responsible Party" and Eva Bishop as the "Resident." The fact that the contract contained a separate signature line for both the Responsible Party and the Resident underscores this distinction. The Defendant prepared the contract to be signed by or on behalf of the Resident. The language in paragraph VI(F) of the contract makes this undeniably clear by providing that:

> The Resident understands that he or she had the right to litigate disputes in a court of law, and that *by signing* this Admissions Contract he/she is waiving such right including any right to trial by jury. . . .

(Emphasis added.)

In this case, the Resident signature line is blank. There is no evidence to suggest that Eva Bishop was present or was even aware of the contract on August 9, 2002. Nor is there any evidence to suggest that Eva Bishop had authorized her son to sign the contract on her behalf or that she had any power or control over her son relative to the contract. By signing the contract as he did, Joseph Bishop obligated himself as the Responsible Party. From the contract and the signature of Joseph Bishop as it appears on the contract, there is nothing to suggest that Joseph Bishop was acting as an agent for his mother. Nothing appears in the language of the contract to suggest the existence of an

agency or representative relationship between Joseph Bishop and Eva Bishop. No evidence was adduced to show any conduct by or attributed to Joseph Bishop or his mother that would warrant the inference of an agency relationship. That Joseph Bishop was the son of Eva Bishop and held her power of attorney are not sufficient to prove the existence of an agency relationship and do not warrant any conclusion other than that Joe Bishop signed the contract in his individual capacity, as is apparent from the face of the contract. Joseph Bishop could readily have signed the Resident signature line for or on behalf of his mother. The power of attorney he held would certainly have empowered him to do so. For whatever reason, he did not. It is not for this Court to interpret this contract in any way other than as clearly and unambiguously appears from the contract itself. Neither Eva Bishop nor anyone on her behalf signed the contract and, therefore, she did not waive her right to "litigate disputes in a court of law." Accordingly, based on the facts before it, it is the conclusion of this Court that the Defendant has not met its burden of proving that an agency relationship existed between Joseph Bishop and his mother incident to the contract. Consequently, Joseph Bishop was a party to the contract in his individual capacity and that his signature, as such, did not bind his mother as a party to the contract. Since the binding effect of the contract extended only to the "parties and their respective representatives, successors, and permitted assigns" the contract is not binding on either the estate of Eva Bishop or her duly qualified Executor.

## B. *Third-party Beneficiary*

It is generally held that a person is not bound by a contract to which he did not agree. Therefore, it follows that a nonsignatory to a contract containing a mandatory arbitration provision cannot be compelled to arbitrate. "Arbitration agreements cannot be extended by construction or application. ... The law is clear that persons who are not parties to an arbitration agreement cannot be compelled to participate in arbitration." *City of Peru v. Illinois Power Co.*, 258 Ill. App. 3d 309, 630 N.E.2d 454, 457 (1994). The Defendant, however, urges the Court to consider an exception to this general rule and hold the Plaintiff bound by the arbitration provision because Eva Bishop was a third-party beneficiary to the contract. Apparently an issue of first impression in Virginia, the exception advanced by the Defendant provides that a nonsignatory can be bound by a contract containing an arbitration provision if the nonsignatory is a third-party beneficiary to the contract and either the third-party beneficiary's claim is dependent upon the existence of the contract or the claim is "intertwined with and related to" the contract. *Cook's Pest Control, Inc. v.*

*Boykin*, 807 So. 2d 524, 526-27 (Ala. 2001).[4] Thus, where the contract under which the third-party beneficiary asserts his claim contains an arbitration provision, he will be required to "accept both the benefits and the burdens of that contract" and will be bound by the arbitration provision of that contract. *Benton v. Vanderbilt Univ.*, 2003 Tenn. App. LEXIS 251, No. M2002-00085-COA-R3-CU at 30 (Tenn. App. March 31, 2003); see *Sydnor & Hundley, Inc. v. Wilson Trucking Corp.*, 213 Va. 704, 707 (1973).

A person is a third-party beneficiary to a contract if the contract clearly and definitely intended to confer a benefit upon him. *Professional Realty Corp. v. Bender*, 216 Va. 737 (1976). In the instant case, the very purpose of the contract was the provision of nursing services to Eva Bishop. The contract itself manifests the clear and definite intention of the parties to confer a direct benefit upon Eva Bishop. Accordingly, Eva Bishop was a third-party beneficiary to the contract at issue herein.

It is equally clear that, by its contract, the Defendant agreed and was obligated to provide Eva Bishop with "nursing care as directed by the Respondent's physician and as required by law for the health, welfare, and benefit of the Resident." Even though it is the nature and quality of the care as furnished by the Defendant that lies at the heart of the dispute between the parties in this case, the Plaintiff has elected to bring the instant action in tort rather than contract. The Motion for Judgment as filed in the instant case makes no reference to the contract. In his suit, the Plaintiff neither alleges a breach of nor seeks to enforce rights under the contract. The Plaintiff asserts no claim under the contract. The existence of the contract is not necessary for the Plaintiff to establish his case for wrongful death. The Plaintiff's wrongful death action derives no basis or benefit from the contract and is neither strengthened nor weakened by proof of the existence of the contract. In short, the plaintiff's wrongful death action places no reliance whatsoever on the contract. Consequently, the wrongful death claim advanced by Joseph Bishop, as Executor of his mother's estate, is not dependent upon the existence of the contract containing the arbitration provision.

With respect to the intertwining claims component of the exception, characterization of the claim as negligence does not automatically preclude the application of this exception.

> That the claim sounds in negligence (failure to exercise reasonable
> care) rather than breach of contract (failure to fulfill a contractual

---

[4] The Court's consideration of this exception is in response to the argument advanced by Defendant herein and does not constitute a determination that the exception would be recognized under Virginia contract law.

obligation) does not ipso facto sever an otherwise significant relationship between the contractual obligation and the matter in dispute.

*Consolidated Resources Healthcare Fund 1, Ltd. v. Fenelus*, 853 So. 2d 500, 506 (Fla. App. 2003). To "intertwine" is defined as to "become mutually involved." *Merriam-Webster's Collegiate Dictionary* 613 (10th ed. 1993). The contract at issue herein required the Defendant to provide nursing care to Eva Bishop. The Plaintiff's wrongful death action against the Defendant is premised on the allegation that the Defendant was negligent in the care it provided to Eva Bishop.

The specific allegations of negligence as contained in the Motion for Judgment include the following:

(1) Failing to employ a reasonable amount of attention and skill in the monitoring of the decedent;

(2) Failing to properly attend to decedent;

(3) Failing to properly insure decedent's safety;

(4) Failing to properly set up, maintain, and operate the air mattress and bedside rails used by the decedent;

(5) Failing to properly train its staff;

(6) Failing to regularly inspect the safe operation of the air mattress and bedside rails used by the decedent.

An obvious nexus exists between the specific allegations of negligence contained in the Motion for Judgment and the Defendant's contractual obligation to provide "nursing care ... as required by law for the health, welfare, and benefit" of Eva Bishop. In the view of the Court, however, this nexus is neither substantial nor significant. The instant case involves a wrongful death action based upon a claim that the death of Eva Bishop was caused by the negligent and wrongful actions of the Defendant. The Defendant's contractual obligation to provide nursing care "as required by law" may or may not include those duties the Defendant is alleged to have negligently failed to perform incident to its care of Eva Bishop. Thus, the evidence necessary to prove the allegations of negligence which underlie the Plaintiff's wrongful death claim is not necessarily inclusive of the evidence necessary to prove that the Defendant failed to meet its obligations under the contract. The wrongful death action and the contract are neither mutually involved nor mutually dependent.

The fact that the third-party beneficiary is not the Plaintiff in the instant wrongful death action is also noteworthy. The sole purpose for the existence of the contract at issue herein was the provision of nursing care to Eva Bishop. When Eva Bishop died, any reason for the continued existence of the contract

ceased. Thus, the purpose for the contract ended before either Eva Bishop's Estate came into existence or her Executor qualified. Under Va. Code § 8.01-50, a wrongful death action is brought by the decedent's personal representative for the decedent's beneficiaries. Even though the cause of action arguably arose at the time of the alleged negligent acts, it is clear that the right of action for wrongful death did not arise until the death of Eva Bishop. In a sense, the wrongful death action in Virginia replaces the survival of the decedent's cause of action for negligence. Therefore, in the context of a wrongful death action, whatever claims Eva Bishop may have had for the Defendant's negligence as a cause of her death ended upon her death and were replaced by the right of her personal representative, on behalf of her beneficiaries, to pursue a wrongful death action. For these reasons, it is clear that the claims of negligence which underlie the wrongful death action as filed herein are not "intertwined" with the contract at issue herein.

Therefore, it is the conclusion of this Court that the wrongful death action at issue herein does not constitute an assertion of a claim under the August 9, 2002, Business Contract and, since the claims of negligence contained in the Plaintiff's Motion for Judgment are neither "dependent upon the existence of" nor "intertwined with and related to" the contract, the Defendant's argument regarding the exception to the general rule that a person is not bound by a contract to which he did not agree is unpersuasive and the exception, as averred by the Defendant, is not applicable to this case. Eva Bishop was not a party to the contract because the contract was not signed by her or on her behalf. Consequently, neither she nor her representatives, successors, or permitted assigns are bound by the contract, and the Executor of her Estate cannot be compelled to arbitrate the claims of negligence which underlie the wrongful death action at issue herein. The Defendant's Plea in Bar, Motion to Compel Arbitration, and Motion to Dismiss are therefore denied. In light of this ruling, the Plaintiff's termination argument need not be addressed.